WILLIAM SLATER *vs.* WILLIAM M. F. MAGRAW AND GEORGE H. DUTTON.—*December,* 1841.

Where the language of a contract is equivocal and ambiguous, regard is always to be had to the subject matter about which the parties are stipulating, and such a construction of the terms used is to be adopted, as will carry their intention fully into effect; but where a party expressly contracts as security, he is not to be treated as principal.

The rule is well settled, that where the interest of the parties is several, and the language of the covenant is joint, the right of action founded upon it is several. Where the interest is joint, the action must be joint, though the covenant in terms appears to be joint and several.

The breach assigned in covenant should be within the terms or the legal effect of the instrument declared on.

Where M gave his receipt under seal for the purchase money of a slave for a term of years, sold by him; and in the same instrument stipulated to give a good title when called on; and D also sealed the same paper, prefixing the word "security" to his name. This was held not to be the *joint* covenant of both, nor the joint and several covenant of each to convey a good title. That M was the principal, and D the surety; the title was to be conveyed by M, and not by D, who had no title.

Neither was this a joint covenant that M should convey, nor a covenant to deliver the negro.

The covenant in this case to convey the title was the covenant of M alone; and the covenant of D a several one in the character of security, that M should make the title when called on for that purpose.

APPEAL from *Harford* county court.

This was an action of *Covenant* commenced on the 18th December, 1838, by the appellant against the appellees.

The plaintiff declared, as follows—

*1st Count.* That whereas the said defendants, on the 26th July, 1838, at, &c., by their certain agreement, sealed, &c., covenanted to and with the said plaintiff, that they the said defendants, when thereto requested, would convey to the said plaintiff a good title to a certain negro slave called *Upton,* to hold the said negro to the said plaintiff as his slave for the term of ten years from the day and year aforesaid. *Breach*—that the defendants, though often requested, have not conveyed, &c.

*2nd Count.* That the said defendants by, &c., did covenant with the said plaintiff jointly and severally, on, &c., at &c.,

that they or either of them when thereto requested, would convey to said plaintiff a good and sufficient title to a certain negro boy called, &c., to hold the said negro to the said plaintiff, as his slave, for, &c. *Breach*—that the said defendants, although often requested, have not, nor has either of them conveyed to the said plaintiff a good, &c.

*3rd Count.* The said defendants, on, &c., at, &c., covenanted to and with the said plaintiff, by, &c., that the said *Magraw* would convey to said plaintiff a certain negro boy, &c., to serve said plaintiff as his slave, for the term of ten years, by good and sufficient title, when the said *Magraw* should be thereto requested. *Breach*—that *Magraw*, although often requested, hath hitherto wholly refused to *deliver* said negro to said plaintiff.

*4th Count.* That the said defendants on, &c., at, &c., by, &c., covenanted to and with the said plaintiff, that the said *Magraw*, when thereto requested, would convey to said plaintiff a good title to a certain negro boy named, &c., to hold the said negro boy to said plaintiff, as his slave for, &c. *Breach*—that *Magraw* hath not conveyed to said plaintiff a good title to said negro, to hold the said negro to said plaintiff, as his slave for, &c.

The covenant filed with the declaration, was as follows:—
"Received, July 26th, 1838, of *William Slater*, the sum of two hundred dollars, in full, in payment for my negro boy *Upton*, to serve ten years as a slave to the said *William Slater* of *Frederick* county, State of *Maryland*. Witness my hand and seal, this 26th day of July, 1838. I do hereby obligate to give the said *William Slater* a good title for said boy when called on.     W. M. F. Magraw, (Seal.)
        Security:     Geo. H. Dutton,    (Seal.)

The defendants demurred, generally, to the declaration, in which the plaintiff joined, and the county court maintained the demurrer. The plaintiff appealed.

The cause was argued before Buchanan, C. J., Stephen, Dorsey, Chambers and Spence, J.

By O. Scott for the appellant, who insisted that the judgment ought to be reversed—

1st. Because from the covenant of appellees, as set forth in the first and second counts of the nar, and shewn in oyer, they were bound to convey the negro *Upton,* as alleged, to appellant.

2nd. Because if the covenant is not a covenant by appellees to convey jointly the said negro, then it is a covenant, that *Magraw* shall convey, as set forth in the third and fourth counts.

By Constable for the appellees.

The instrument declared upon by the plaintiff is not a *joint,* but the *several* covenant of each of the defendants. It is a covenant by *Magraw* to convey the title to the negro boy, and a covenant by *Dutton,* that he should do so. The covenants are to the same thing—both relate to the title to the boy; but they are not to the same effect.

The whole instrument must be taken together, and the *first* part of it shews, that *Magraw* owned the negro boy, as his individual property; that as such several owner, he treated with the plaintiff, made the sale to him, and received the money; and therefore covenanted to convey the title. Now *Dutton* was clearly no party to the sale. He did not undertake to sell or convey the boy, for he had no interest in, or title to him, but expressly contracted as security, as is shewn by writing that word opposite his signature. What then is the legal effect of that word, in the connection in which we find it in this instrument? Is it not a *several* covenant to this effect : "I guarantee the performance of the above covenant by *Magraw.*" This, we think, would be the covenant of a " security," and apprehend, that the word must have the same legal effect as the contract would, were it written out above the name, otherwise he ceases to be merely a " security," although he contracted in that character alone, and as such was accepted by the plaintiff.

The cases cited from *Chitty on Bills and Espi. N. P.,* are entirely dissimilar to this; there the covenant or promise was to pay money, and that could be done by both, so that the

substitution of the word " we," for " I," did not make the parties covenant to do what they could not, while, here if the words are so changed, *Dutton* is made to covenant to do that which be not only never designed, and which *Slater* did not desire him to do; but in fact, what he could not perform.

The covenant in this case is as follows: "I do hereby obligate to give the said *William Slater* a good title for said boy when called on." Now, if " I" *is converted into* " we," it must read " we do hereby obligate to give said *William Slater* a good title for said negro boy when called on," which would make *Dutton* covenant to give a title when the preceding part of the instrument shews, that he had no title whatever, and had neither sold, nor pretended to sell the boy, and when the character of " security," in which he covenanted, further shews, that he never intended to be a principal in the covenant; but merely to give a *several* assurance as guarantor that *Magraw* should make a good title.

STEPHEN, J. delivered the opinion of this court.

Upon the pleadings in this case, according to the true construction of the covenant, which furnishes the basis of the plaintiff's action, we think the judgment rendered by the court below was correct, and ought to be affirmed. The declaration contain four counts, in neither of which does the plaintiff set out a good and sufficient cause of action, according to the sound legal interpretation of the contract upon which he has declared. The *first* count charges a *joint* covenant by the defendants, that they would convey a good legal title to the plaintiff for the negro slave called *Upton;* this is too clearly defective to admit of controversy, as *Dutton*, the security, had no title to convey, and never stipulated to any such effect. A contract by him to transfer the title, he having none to convey, would have been idle and nugatory, and therefore, was in fair, legal construction, no part of his undertaking. The *second* count is, that they covenanted, jointly and severally, that they, or either of them, would convey the title. This count, we think, is also defective, because it does not state the true, legal

import of the covenant, upon which the suit is instituted, and was therefore fatally defective upon the demurrer of the defendant. In the covenant in this case, it is manifest, that *Magraw* stood to the plaintiff in the relation of principal, and *Dutton* in that of security; the title to the negro slave was in *Magraw*, and not in *Dutton;* the title was therefore to be made by him, and not by *Dutton;* to give to the contract a different construction, would be not only doing violence to the dictates of reason and common sense, but to the plain understanding of the parties. In a case where the language of a contract is equivocal and ambiguous, regard is always to be had to the subject matter about which the parties are stipulating; and such a construction of the terms used, is to be adopted, as will carry their intention fully into effect. According to 1 *Powell on Contracts*, 380, the principle is, " that the matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit a larger sense; and therefore the generality of the words used, shall be restrained by the particular occasion." But in this case no doubt or ambiguity can well exist, because he expressly contracts in the character of security only. The *third* count is also vicious, because it states a joint covenant, that *Magraw* would convey the negro by a good and sufficient title; and assigns as a breach, not a failure or omission to make the title, but the non-delivery of the negro only, according to contract. It is scarcely necessary to say, that such a breach is not within the covenant, as stated by the plaintiff in his pleading. The *fourth* and last count is the only one, upon which the plaintiff can have the semblance of a title to recover; and that count charges a joint covenant by *Dutton* and *Magraw*, that *Magraw* should convey a good and sufficient title to the negro slave, which it alleges, although often requested, he has refused to do. This count, we also think, is legally insufficient to entitle the plaintiff to recover. After acknowledging the receipt of two hundred dollars, which he says is " in full in payment for *my negro boy Upton*," the following covenant is added, " I do hereby obligate to give the said *William Slater* a good title

for said boy when called on ;" to this covenant is subjoined the names and seals of *W. M. F. Magraw* and *George H. Dutton,* the latter adding or rather prefixing to his name the word "security." In giving a construction to this covenant, it is important to consider the relation in which the parties respectively stood to the subject matter of the contract, and their competency to do the thing stipulated to be performed ; *Magraw* was the owner, and alone competent to transfer the title covenanted to be made ; *Dutton* was the security, and had in himself no title to be conveyed. The covenant to give the title was, therefore, the covenant of *Magraw* alone ; and the covenant of *Dutton* a several covenant, in the character of surety, that *Magraw* should make the title, when called on by *Slater* for that purpose. This, we think, is the true import of the covenant of the parties, and viewing it in this light, it follows as a necessary consequence, that the plaintiff has failed to shew in his pleadings a good and sufficient cause of action, and that the judgment of the court below must be affirmed. We do not think that the case of a promissory note, referred to in *Chitty on Bills,* 433, can govern the construction of this covenant. The case of a promissory note, for the payment of money, which is an evidence of indebtedness, is clearly distinguishable from a covenant, binding parties, who stand in different relations to the subject matter of such covenant, to the performance of different and distinct duties under such covenant. The rule is well settled, that when the interest of the parties is several, and the language of the covenant is joint, the right of action founded upon it will be several. *For this* principle, see the *Law Compendium,* 285, and the authorities there cited, where it is said, " if the interest of the parties is several, although the words of the covenant itself be joint, yet the covenant shall be taken to be several ; and where the interest is joint, the action must be joint, though the covenant, in terms, appear to be joint and several." The judgment below is affirmed.      JUDGMENT AFFIRMED.